Mr. Adams? Yes your honor. Good to have you with us sir. Thank you your honor. May it please the court. I am Jimmy Adams from Guilford County, North Carolina, Greensboro. Along with me is Dan Colston. We have the honor of representing Stephen Pond in this matter. Your honor, the issue before the court today is whether Mr. Pond's July 2017 mailing of his form 1040x tax return for the 2013 tax year was delivered to the IRS sufficient for him to be entitled to a refund for taxes claimed and paid in 2013. The government in this case has conceded the Mr. Pond, based on the same computational error, relied to imbibe a refund claim for 2012 and that was paid. Instead the IRS, based on its own regulation, Treasury Regulation 301-7502-1, excuse me, 301.7502-1, says Mr. Pond's July 2017 mailing was late or did not arrive and therefore they don't have to pay what is otherwise they would have to pay. And the district court, for the same reasons the IRS relies upon, said that the district court did not have jurisdiction to even consider whether Mr. Pond was entitled to the refund. And so there are two fundamental issues for the court today. Number one is the IRS regulation entitled to deference under Chevron versus Natural Resources Defense Council such that the regulation should be allowed to stand as is. And secondly, even if the regulation existed, Mr. Pond plausibly alleged facts that establish actual delivery such that he satisfied the delivery standard notwithstanding the regulation. And, Your Honor, I propose to start with the Chevron issue. Before you start with Chevron, I mean, so before we talk about Chevron, we read this statute, right? And it strikes me that the statute itself is like quite clear that in a case where there's no actual delivery, you only get a benefit if it's certified, right? This is C, right? Subsection C. That's what the statute, that is a way the statute has been read, Judge Richardson. Right, so but just let me start with this premise. If that, if I believe that that was abundantly clear, that the statute was unambiguous, that A deals with timeliness when actual delivery, C deals with late delivery, then why do I even look at the regulation or any of these questions, right? All the rest of these things go away, am I right? If the statute is clear that the language says what it says. That's absolutely right, Your Honor. If the statute is clear, then Chevron and all of the cases decided under Chevron would say you never have to get to the regulation. And in fact, it would say the regulation should have never been promulgated in the first place because it's unnecessary because the statute... Well, Chevron doesn't say the regulation shouldn't be promulgated. The executive can do whatever they want to do. The point is the regulation just doesn't matter. Correct, Your Honor. So help me understand your argument for why there's ambiguity. Because when I read A and C, they seem to be quite clear to me. And so help me understand before you get to Chevron and, you know, all sorts of other things, like why is there ambiguity? So, Your Honor, let's back up for a second. So... Why don't we start with the text instead of backing up? Why don't you point to me in the text where I can find some, like, hope of ambiguity? Well, Your Honor, the text of the statute, first of all, the Supreme Court has said, all the way back to Rosenthal and other cases, that Congress is presumed to legislate in the context of the common law. And so you have to start with Congress's assumption that the common law exists in the first place and that Congress is going to then legislate and select... But that doesn't overcome clear text, right? I mean, the point of that is, is it doesn't trump, you know, what we have described at various points. The Supreme Court has described as this presumption because where the text speaks directly to the question, right? That's as U.S. versus Texas, the most recent discussion, where it speaks directly to the question, then the presumption goes away. That's what over... That's why it's a presumption, not a rule. And so if the text speaks directly to the question, that is, I might say here, whether regular mailing or certified mailing is required to get the benefit of a delivery presumption, the text is, like, remarkably clear in speaking to that very question in C. Your Honor, I would submit that the text is not clear on that at all. Maybe we could look at the text together. So, Your Honor, if you, if you start with... And, Your Honor, you're looking at subpart C, registered and to be clear, you have to treat that as a standalone provision. You have to be saying that Congress wrote this in such a way that the only way that you get a presumption of mailing under any circumstances is if you have registered a certified mail in the situation where it's not actually... I read it in the context of A as well, right? Because A is the other side of this, right? So where there's actual delivery, but there's a debate about timeliness, we got a whole set of rules that apply to that, right? And, and you might, you know, be able to show actual delivery. We'll talk about that claim separately. And so you might get the benefit of A if you're able to show actual delivery, which hypothetically you might have plausibly alleged here, right? So you might fall under A, but for the argument you're making about 7502, as I understand it, you're trying to rely on C to say, even if there's not actual delivery, I still get the benefit, right? I get the benefit of a presumption of delivery, not of timeliness. That's correct, Your Honor, because the common law mailbox rule presumes that if you place an item in the mail, properly addressed, properly postmarked, the postal service will actually do its job. And so the, the courts have said, we are going to give the risk of loss in that situation, we're gonna assign it to the postal service, that they're gonna assume they're going to do their job, and that might well bend, might well bend the common law rule, but then 7502C comes in and says, yes, that rule applies, that very rule applies, but only where it's by registered mail, right? Or maybe certified mail too, but we'll just focus on certified or registered mail, right? It only applies in that circumstance. So it's spoken to that very question. It's not any mail, it's really easy for your client to do, right? You just send it by certified mail, right? Something that, I mean, we all know how to do. Your Honor, what I would submit, if you, delivery has to occur first, and then the question is when it was delivered? No, that's A, not C. Exactly, Your Honor, and that's the reason Congress drafted the statute the way they drafted it. The statute was intended to handle those situations where you're mailing it from different parts of the country or different parts of a location, and ordinary routine mail might get it there in time, and it might not get it there in time. So what Congress did, it created... But that doesn't have anything to do with C, right? Yes, Your Honor, it does. What? Help me. I don't understand how that... Because C is only about a question where it's certified, right? So you got certified mail, and if there's no delivery, right, we'll presume it was delivered, right? That's the, as you put it, like the liability on the post office, not actual liability, but we put the responsibility on the post office. Correct, Your Honor. Right, that's fine, but like that doesn't have anything to do with timeliness. And Your Honor, and we're not, we're not, we are not relying on 7502 for timeliness. This, the deadline for this filing was October 28th of 2017. It was filed, it was put in the mail on July the 18th of 2017. Plenty of time to satisfy the timeliness requirement. We are not requiring, we are not relying on 7502 to show this was timely whatsoever. But to your point about the, the, the regular... Can you, yeah, can you tell me how you fall under, or maybe you agree you don't, how you fall under, at least ambiguously fall under the text of 7502? We don't need it, Your Honor. So you agree you do not fall under the text of 7502C? Well, Your Honor, it is our... Well, let's start with a, let's start with a question, right? Do you agree you do not fall within the text of 7502C? We did not mail, our client did not, with his accountant, did not mail this registered or certified. So the answer is yes, you admit that you are not under 7502. OK, so, so then tell me why, why we're not done. Because, Your Honor... On this claim, I get the actual delivery claim. 7502C is just a safe harbor, which the Baldwin Court and the Ninth Circuit relied on, the Third Circuit has held that, the Eighth Circuit has held that, the tenths, all of the courts that have actually done a deep dive on this issue have concluded that the common law still existed when Congress passed 7502 in 1954, and that C was only a safe harbor provision for people that were, for example, you could mail it on the last day, and if it arrives, you're good. But if you mail it on the last day, even giving the mailbox rule that says routine, if they don't have actual delivery, 7502 would say, you're out of luck. But there's a safe harbor, and that's the language that's used in the Anderson case, and even in the Baldwin case and the Sorrentino case, you have a safe harbor that allows a taxpayer to use registered or certified mail to get over that hump when you're filing it late in time to satisfy A, and so, Your Honor, Why do you think that helps you? Because we don't need 7502 at all, Your Honor, because of the common law mailbox rule, we rely on the mailbox rule. We are relying on the mailbox rule. You're saying you mailed it by regular mail on October the 18th. On July the 18th, Your Honor. July the 18th. Which was... And it had to be, it had 10 days to get there. Right, and we had four months to meet the deadline. Four months to get there. There was a four-month window that the deadline... Common law mailbox rule should have gotten there then. Yes, Your Honor. And this, the rules of construction of statutes, you have to presume that... There's a presumption that the good in the mail gets delivered. Yes, Your Honor. We presume the postal service... I remember, I think the law school, they told us that the statutes and interrogation of the common law must be strictly construed. Correct, Your Honor. Is that still a principle law? Yes, it is, Your Honor. And the Supreme Court has been very clear... So does that mean they had to say, we are repealing the mailbox rule? Is that what your position is? They didn't have to say, we are repealing, Your Honor, but the language... All they had to do in Texas is speak directly to the question. Right? They speak directly to the question. Your Honor, the language from the Supreme Court, um, Norfolk redevelopment case, 1983, is that the language must be clear and explicit for this purpose. And if you look at the language of the statute, C is even limited to for purposes of this section. And the, the point of A was to assist, was to help taxpayers. It wasn't to hurt taxpayers. It was to give taxpayers the assistance of being able to file late and still be on time. And so, for example, in the Philadelphia Marine case for the third circuit was quite clear. It said, it's difficult to imagine Congress by passing a law that was designed to protect taxpayers who meet 7502 requirement would simultaneously eliminate a rule that had been in place for decades and allow them to have the common law mailbox rule. In fact, Your Honor, 12 years later, 14 years later, Congress amended the statute and in the legislative history in the, um, in its committee report was quite clear that registered and certified mail was not the only way in order to prove mailing. Now it was in a different context. You could have delivery, right? That's another way to prove mailing, right? If the IRS receives it. You have electronic mailing. Well, but Your Honor, there's a difference between delivery and the IRS saying that there was delivery. And I totally get, and I'm happy for you to talk about it. I totally get that you may well have plausibly alleged that there was delivery here, right? And you may get to have that fight. I totally understand that argument, right? But that's not responsive to this one, right? The fact that the IRS says that they can't find it in the system is not quite the same thing as saying it was never received. I get that, but that's not responsive to this argument. Well, Your Honor, that's a factual question as to whether or not, the legal question is, does the mailbox rule still exist? All of the, all of the other circuits that have examined this in any detail have said, yes, it existed. Baldwin then goes on to say, well, it's that the statute was not clear. And so the IRS had the latitude to make a, to pick which way they wanted to go, which we would submit would be wrong itself because the IRS or any other administrative body does not have the authority to decide we're going to keep the common law or we're not. The Supreme Court has been quite clear that Congress and only Congress has the authority to decide whether the common law is in or the common law is out. And it does. Do you disagree with the premise that when Congress speaks directly to the question addressed by the common law, that the canon of common law derogation is abrogated, so it doesn't apply. That the precise language is where Congress speaks directly to the question addressed by the common law. Right. And I read 7502 is speaking very directly to the question of the common law mailbox rule. It is a statutory version of the common law mailbox rule. It's even got the two parts, A and C, which match on to the two parts of the common law mailbox rule. So it is spoken very directly to the question of what's the scope of the mailbox rule and for purposes of C, it says it only applies if it's certified mail, regular mail doesn't get you there. Your honor, we would submit that the statute does not speak to the common law mailbox rule because the common law mailbox rule presumed delivery in a regular time, whatever the regular time would be, and the cases that... Well, that's exactly what the C does for certified mail. It does exactly that for certified mail, but only certified mail. To take advantage of that rule, you just have to do it by certified mail. It costs you an extra 35 cents or something. I don't know what it is, but like you get the little green piece of paper, right? Like this is not like a complicated story, but to avail yourself of the mailbox rule, you've got to do it by certified mail. That's what 7502C tells us. And your honor, the Miller case out of the Sixth Circuit agrees with you. All of the other circuits that have looked at this in any significant way disagree and conclude that C was a safe harbor, that Congress did not abrogate the common law. There's no regulation there. Which is what, but Judge King, that was the second error because the IRS does not have the authority to decide to get rid of the common law. The Supreme Court is crystal clear. The only entity that has the authority to get rid of the common law is Congress itself. So you say the regulations are good. Yes, sir. But I got another question and I didn't know you were getting here past your time. But you all were entitled, your client was entitled to a refund. Yes, sir. Why did they have to file a claim for a refund? I thought the IRS was obligated by law to send them a refund, period. Well, your honor, that was- Without a claim. And you raised that in your brief on page 16 and 17, I think. Yes, your honor. We- Which I thought, when I was entitled to a refund, they made me a refund. So your honor, the IRS's position is, well, this statute, we say, is clear that in this context, involving a partnership- Why are they here if they're obligated to pay you a refund? It's your money. Because they've said they don't have to pay us. And they don't get it because you missed the statute of limitations. Well, what happened to your money? Is it gone to the national debt or been forfeited to the United States, going back to the general fund? I don't know. But it's a debt owed by the United States to your client because it wasn't a tax liability. That's our position as well, your honor. The IRS- Why isn't that the big issue here? I don't know why we're here. If that's- if they were obliged to pay you the refund. Well, the issue, your honor, as I understand it from the IRS's perspective and the district court said, because they agree with the IRS, they don't- the court said it didn't even have jurisdiction to look at this issue, let alone look at the facts. But the internal- The district court's jurisdiction is limited to where it is duly filed. Right? That's 7422. Yes, sir. And so it might be that you don't have to, but you can't get judicial review without having duly filed it. Right. So it's a double whammy. Number one, you don't get the return. And number two, you can't get anybody to look at it and say whether you should have gotten the return or not. Yeah. It seems unfair, but also seems like what the statute says. Right? It seems it's what the statute says, unless you deem the- you get your return- your refund in on time and accept yet another example. The, um, the other statute, 6230 says in the context of a partnership return, which is what this was. So there was an audit of the partnership and the IRS messed up the audit and told Mr. Pond he owed more money when he really didn't. It says that in that context- And Mr. Pond had messed up too. So it turned out nobody got it right. Well, he paid something he shouldn't pay. That was a mistake. Um, but he should have gotten his- he should have been able to get his money back. And he didn't mess up. He did exactly what the IRS said in- I mean, originally. So he messed it up. The IRS thought he owed more. Turns out he owed less. No, you're right. He's just an investor in that partnership. He's not an active participant. Not like him, the partnership. Yes, Your Honor. But, Your Honor, to your- and I know I'm out of time, but I- How much money is involved? Uh, about $145,000, Your Honor. Thank you. I didn't mean to interrupt you. So, Judge King, let me just finish answering your question. There is another provision in the statute that says that it's, uh, 26 and I wasn't of an overpayment by a partner attributable to a partnership item, which is this case. Um, a refund of such overpayment shall be allowed without any requirement that the partner file a claim. And- Then, uh, somebody- then we shouldn't even be here. Why didn't the government- Why didn't somebody say there's no case or controversy? The government's position on that is we didn't raise that below. Um- Well, okay. So, you raised it in your brief here, but you didn't raise it in the district court. We did not cite to that particular statute. All right, so you waived it, so- so you could waive it. Well- Create a jurisdictional basis for a- Your Honor, we don't consider that we waived it- A federal lawsuit by nobody understanding it? That's an additional methodology for which the IRS was on notice. We have to look at jurisdiction first and foremost. Yes, Your Honor. And our position is, is that when- We throw it out for lack of jurisdiction, what's happened to your money? The government gets to keep- Do they still owe you money? No, Your Honor. If we don't have any- if we don't have the ability to go and get- No, but they owe it to you. They still owe it. We just can't collect it. Okay. You take it. I will do- I thought you stirred it up here for another extra six minutes. That's all right. You saved some time back. I'm going to put it in revival. All right. Um- Thank you, Your Honor. Mr. Will- Will? Willie. Willie? Mr. Willie, good to have you here. Good morning, Your Honor. Yes. Good to have you here, sir. May it please the court, Robert Willie on behalf of the United States. All right. This case is about ensuring there is a clear, easily applied standard for determining whether a document was delivered to the IRS and then applying that standard in a logical manner. The district court's decision should be affirmed for three reasons. First, the court properly recognized that Mr. Pond's complaint should be dismissed because he failed to allege that he has direct evidence of actual receipt of his claim and he otherwise failed to include a non-conclusory allegation of actual receipt in his complaint. Instead, he attempted to circumvent the treasury regulation by using circumstantial allegations of document mismanagement to raise an inference that the IRS received and then destroyed the document, but this inference is insufficient to establish actual receipt and unwarranted in any event. Second, the court properly rejected the application of the common law mailbox rule, although it did not have to resort to Chevron deference to do so. The text, structure, purpose, and history of section 7502 all suggest that Congress intended that it constitute the exclusive exceptions to the physical delivery rule. The statute reflects a desire by Congress to have a clear, easily applied rule in this area. This makes sense as both taxpayers and the IRS benefit from clear standards in this area. Third, even if the court determines that Chevron deference should be applied here, there can be little doubt that the IRS's construction of the statute is a reasonable one. It's the construction of the second and the sixth circuits. That alone could show it as reasonable, but as the ninth circuit also recognized in Baldwin, an agency's adoption of one of two competing canons of statutory construction is not unreasonable. If that's the list, can you go back to the first one? I have a little trouble understanding why they haven't plausibly alleged actual receipt, and it sort of seems like to me it sort of stems from a couple of things. They make the factual allegation that they mailed it, right? And so we know that piece of information. They do conclusory then say it was received, right? But they give evidence to support that it was received, right? And so one of those pieces of evidence is that they sent 12 and 13 together, right? And 12 is deemed timely filed and paid, right? And so from that, we could assume that the IRS received 2012. Fair? Actually, I disagree with that characterization. Well, you think there are two plausible inferences. One is that they received the 2012 from that mailing. The other is that they received it from the Andover discussion. No, Your Honor, they re-sent 2012 before the statute of limitations. But how do we know? They sent it on October 3rd to Andover, right? And so maybe the IRS got it from the October 3rd at Andover, but maybe they got it from July 18th. That's either of those seem to me to be a plausible answer. And then you combine that with the idea that the IRS chose July as the date that the 2013 application was received. Right? Suggesting that, you know, it was around the time of July. And then the IRS responds not by saying we have evidence that it was not received. They instead respond by merely saying that I can't find it in the system. Which, you know, is not like a terribly shocking thing, given sort of the calamity of errors that we've seen. And so you might well be right. But how is that not a plausible allegation that it was received? When you've got the 2012 and you've got the IRS dating it in July, the 2013 deleting it in July, that putting those together, that's a plausible story. You got to do discovery and maybe it's summary judgment. You can prove that they're wrong. Well, but with respect to the dating it in July, what it said is date of claims received July 17th, 2017. And they allege they sent it on July 18th, 2017. And so every right. And so in your your view is that necessarily means because our people are perfect. Right. That like it couldn't possibly be our mistake in dating it on the 17th instead of the 18th. It must mean something else. And that might be right. Right. It might mean that your people are perfect and that like they could not have made that mistake. But a plausible inference, on the other hand, is that like your people wrote down the wrong date. I don't know. Like we know if your theory of the case is right, they didn't receive it in July at all. So whether they wrote the 17th or the 18th or the 21st, I'm not sure why that helps you at the motion to dismiss stage. I'm not I mean, we're not relying on that necessarily to help us, but they're they're relying on it to undermine. You're trying to say our guy couldn't possibly have wrote the 17th because they didn't mail it until the 18th. No, we agree that our guy wrote the 17. But he couldn't have meant he couldn't have meant that it was received that day. Right. Right. But they also don't allege that he meant that it was received that day. They they allege that the agent who received a duplicate fax of the copy in twenty nineteen somehow went back and found the the original filing in the file. Is that their allegation? Where did they say that in the complaint? I don't take that to be their allegation at all. That's your defense. Might work in front of a jury. Right. But they don't let point to the complaint where they say where they allege that what happened was in twenty nineteen, the guy went back and found the date. And that's the date he put on. I don't know how they would know that to allege it. And I don't recall it being alleged. I'm saying that that is that is the inference they're trying to draw from the document. And that's not that's the inference you're trying to draw. Not them. If they want to use that to say that the document with a document means is we actually received the the claim. If they if they want to use that, then that's the inference they're drawing to interpret that document, because, again, it's undisputed that that that that date is is wrong. And so the question is, can we derive some sort of other inference? How can we read into the document to infer something that's not on the face of the document? It does indicate you got it, whether the date's wrong or not. It indicates you got it. You put down there that you got it. I mean, it does. It does it on official IRS record that you received. An official IRS record. You put on there that you received. It indicates a date of a claim received. And if that date was correct, it would be timely file. If that date was correct, it would be timely file. But I mean, we know you chose the date, right? We know that that date is not correct. And I mean, the the the question, though, is, you know, have they met their burden to plausibly allege a waiver of sovereign immunity? And so in terms of actual receipt, if you look at what they need to show to allege actual receipt, then it needs to be, you know, as you said, in Maine Medical, the IRS actually coming across the document in its files. And I'm sorry. So your your view is, is the only way they could plausibly allege that you received it is if the IRS finds it in their files. So it's really they don't they can't plausibly allege it. They rely on your grace in admitting to them that you found it in your files.  Not necessarily, Your Honor. Taxpayers could file a FOIA request before they file their complaint to see if they could uncover in the files. So, I mean, you know, there are there are avenues for that. But again, it I mean, it is it is the IRS respond to FOIA complaints for for people's. Tax returns, I mean, taxpayers generally have, you know, FOIA rights to request their. He could request the partnership's tax. I mean, I don't know what matters, whether he can do a FOIA or not, but. Copy the copies of. Copies of the receipt logs, like the mailroom logs for for July. If they sought the mailroom logs from July from the IRS, you you say they could get that by FOIA. That's the IRS's position. I believe I believe they could. I believe there are other, you know, there are other, you know, mechanisms that taxpayers can use for for investigating some of the things. But, you know, you can also have a situation where before you file the complaint, you what you would have is, you know, if a representative of the IRS actually did communicate to you that the complaint or that the claim was actually received. Right. Yeah, I get I get if the IRS, by its grace, acknowledges that. That's fine. But the question is where the IRS denies it and they want to disagree with it. Right. And I'm with you. You can't have some broadly conclusory claim, but it seems like they've got a claim backed up by facts. And then, you know, instead of a FOIA, they do a deposition. Right. I mean, that that seems like to me the way litigation typically works. Well, again, we're talking about a jurisdictional analysis. All they have to do is plausibly allege, right? Plausibly allege that you received it and they've got facts. I don't know how good they are, but like they seem they seem somewhat plausible. What date do they say you received it? Well, I mean, they don't they don't provide a date that that they claim we actually received it. Um, I mean, I, you know, I, I don't know what we know with it. They don't I don't believe in the complaint, have a specific allegation that we received it on this date. What about their claim that they didn't have to file a claim anyway? Corey, they didn't raise that in the district court. Well, it's jurisdictional. I didn't know they could, it goes to the jurisdiction of the court, doesn't it? And the district court, that always has to be considered. Well, it's, it will, it would be. They didn't have to file a claim. What's this case doing in the federal court system? You owe them the money. You got you being the United States of America. You've got $125,000 of the partnership money because there was an overpayment. Somebody had ought to go back to the partnership some way or another. Um, collect it, use it to hire somebody and do whatever they would. What kind of a business is their money? It's not the United States money. Do you agree with that? I don't owe it. Well, it, the, but section 7422 requires that you file a claim in order for the court to have jurisdiction. In other words, what you're saying is that there's been a forfeiture because there wasn't a timely filing of the claim. Is that right? We're saying that the, we're saying that section, that there's a statute of limitations in section 6511. And the, the section 7422 then requires a, um, a timely filed claim in order for the court to have jurisdiction. No, no, no. Do you owe them the money or do they forfeit it by not making a claim? They say in their brief on appeal that you were obliged, you the United States of America, to pay them the money because it was an overpayment. They were entitled to refund it. They were, they were entitled to a refund from the United States and they didn't have to file a claim. Did they have to file a claim? And if they didn't file a claim, was that a forfeiture to the United States of America of $125,000? That has to be your position. They had to file a claim or they forfeited the money. And if that's the law, you need to give us some support for it. I think the fact that you say they waived it, there's no waiver that gets you in a lawsuit and creates jurisdiction. I don't think like that. No, I mean, we, we also say as a substantive matter that they did have to file a claim because section... But file a claim for money that you were already obliged to pay them. I mean, most, everybody's had experience. Maybe not everybody with refunds, but when they, if they overpay their taxes, a lot of people have experienced, they'd like to get that refund check. Government sends it back to them and they don't file any claim for reimbursement. Correct. But the district court in Whittington that we said on page 48 of our brief addressed the issue and said, under the terms of the statute, whether a claim under the section is required without a refund request is contingent on the government's determination that such refund is practical. And the district court in that case interpreted that to mean that it was not automatic and that it didn't somehow waive the statute of limitations and the requirement that you have to have it timely filed. Couldn't both things be true? Couldn't it be true that you don't have to file a claim in order to get a refund? But it also is true that in order to avail yourself of a federal court, that you must have filed a claim? That's correct. That's the situation we've got. Like to get a refund, you don't have to file a claim. But under 7422, in order to avail yourself of federal jurisdiction, you have to have filed a claim. Yes, that's correct. Now we know what your position is. Yes. But why didn't you say there's no case or controversy between the United States and them because you owe them the money and it's on the way? I guess I'm not quite fine. Why didn't we say there's no case? Well, because you're the defendant and there's no case or controversy. If you owe them the money and you're paying it, then the statute of limitations issue is moot. It's irrelevant. But that's not what you said. Well, but we, I mean, we filed a motion for lack of jurisdiction. I mean, I guess I guess. You didn't raise that point of lack of case or controversy. There's no controversy between you and them if you owe them the money. Because you're going to pay it. If they overpaid their taxes, they're going to get it back. That's the way it works, I thought, with the IRM. I guess you're suggesting that we should have filed the motion to dismiss because there's no case or controversy because we planned on paying it to them. Right. And is that correct? Because that. Are you planning to pay them the money? No, Your Honor. And why not? Is it their money? It is their money. What was their money? His answers was, your answers is. But so because they didn't make a timely, I mean, just what is the reason? You first of all, do you acknowledge that they would be owed the money? That they have overpaid their taxes and they're due because of that, they'd be due a refund. Do you acknowledge that? Yeah, I don't dispute that. OK, so why isn't the IRS giving them back the money? Because they did not timely file a claim and because the statute of limitations for filing a claim nonetheless has to be honored. I mean, this is not a circumstance that never arises. I mean, you might be entitled to money, but if you don't file your claim for refund within the statute of limitations, then the IRS would not pay it. Even if you make out a pristine case that you're entitled to the money, as a general matter, if you don't meet the statute of limitations, then. So the IRS can refund money without the assistance of a federal court, right? And I assume does a lot of times. But if you if it hasn't done for some reason, even its own error, refunded money, the person must make a timely federal court action to get the money. Is that correct? Yeah, that's correct. I'm not aware of any practice by the IRS where if they get a late filed claim that that they would consider that, well, maybe they really are entitled to the money. And, you know, in this circumstance, for purposes of equity, we would we would provide it to them. I mean, it's the district court. So there are no exceptions to this rule, is what you're saying? If you don't, if the IRS doesn't voluntarily give you back the money, you have to file for it. And if you don't do that in a timely manner, you're out of luck. Correct. If you don't file a claim within a timely manner, then the IRS doesn't decide. So it's a different rule than the individual taxpayer. If I overpay you for a tax year, overpay the IRS, they, there's a question of whether I want to check or apply it on the following year or something. Then I get credit for the money. Is there a different rule for a partnership or something that they have to file a claim rather than having a check sent to them or having it applied to their next year? Is there some different rule that gives that entitlement? And you're saying, you're telling us, this is a federal appeals court, that if this $125,000, the United States of America is entitled to keep. It's forfeited. If they failed to file a timely claim for a refund, that they weren't entitled to have a check sent back to them. That it was money that belonged to them. You're saying that the IRS basically has taken money that doesn't belong to the government and put it in the government's pocket. Well, that's exactly what it is. And they know it doesn't belong to them, but they're resting on the technicality of the day or the count of the statute of limitations, which we're up here arguing about in a federal case that maybe shouldn't even be your personal case of controversy. If you all owe the money and it's not yours, and you know exactly who it belongs to, it's not like it's going into the government's pocket. Because they don't know who it belongs to. It belongs to that partnership that overpaid the taxes. Correct. But for example, if I file a tax return, and then I wait more than three years, and I file a claim for refund, the IRS will- That's where there's an announced dispute or something. There's an issue about whether they overpaid. There's a matter in dispute. They want to file an amended return or something, get some of the money back. But here, they've told them, we know you overpaid. As a way, I understand the facts here. Is that wrong? You just said $125,000. You brought up the $125,000. Well, I mean, I don't know that the IRS ... The IRS hasn't done a substantive review of the claim. Well, I think they say something exactly like that. And you're the only ones we got here. And you're the IRS. You speak for the IRS. That's your client, the United States of America. Right, and I don't- It would be like the United States of America, to fulfill its obligation. So is it your position that ... I just frankly don't understand your position. Do you acknowledge that the IRS owes them some money in the refund? And if so, do you come to the same amount of money? Or do you say that, no, you don't owe them any money? Leave aside whether it was a timely ... We'll get to that in a second. Well, the IRS hasn't done a substantive review of the claim for refund. So it denied it because it wasn't timely. So there is no acknowledgment that you owe them the money, is that it? Is it- By the IRS. Right, and the IRS ... Yeah, I mean, we don't ... Yeah, we haven't come to a determina- The IRS didn't come to a determination that it is the amount of money that they're owed in the substantive matter. Well, what ... Are you ... Is there something that you've done as a procedural matter? What are you talking about? Why did you say it's a substantive matter? Because it was denied on the statute of limitations basis before there was any substantive review of the claim. I thought you told them earlier on that when they ... In connection with the 2013 return, that there was a $125,000 overpayment. And they waited too long, you say, to ask for it back. But you had the obligation to give it back to them, if it belonged to them. Is ... Well, we did pay back 2012. That's the only point I'm making. But did you say- And if that's the case, there's no federal courts going through the motions here. Is ... Well, we paid ... We refunded 2012. They're claiming a carryover to 2013. And so, the carryover has not ... It was denied for 2013, it was denied on a procedural basis. Not based ... But there was not a substantive review of that done. Well, they're brief argues that they didn't have to file a claim in the federal ... Did not file a claim with you all, at all. That they were entitled to have it paid back, the overpayment. Either by having it credited to some, I guess, their account, or by getting a check. And your only response to that is that ... Is what you've said here today. That it was too late, or something. Correct. No, your response to that was they didn't raise it below. Your response to that was they didn't raise it below. Well, if it's jurisdictional, they can't waive jurisdiction. I'm telling you that right now. I understand enough law to know that. The federal court has to decide its own jurisdiction. If there's no case or controversy, that's in the Constitution of the United States. If there's no case or controversy, we don't have any business getting in it. Right, but if you owe the money, it's their money. You owe it to them. If you don't dispute that you owe it to them. You don't have a right to steal it from them. You are now saying that has not ... You're not admitting you owe it to them. That has not been determined by the IRS. That has not been determined by the IRS. Right. But you've not defended this lawsuit on that ground. You've instead defended the lawsuit on the procedural ground. Right, we've defended the lawsuit on the procedural ground. Unless the court has further questions. Thank you very much, Mr. Willie. Mr. Adams? Thank you, Your Honor. Can you start with this question? Right, so I understand your argument under 6230, right? D, whatever, whatever, whatever. But I don't understand how that has anything to do with our jurisdiction, right? 7422 gives us limited jurisdiction, right? This is the jurisdiction we have and it requires a duly filed claim. And so I don't see how 6230 has anything to do with our jurisdiction and how it could overcome or trump or change our jurisdictional grant, which I assume you agree is 7422. Yes, Your Honor. Our position on 6230 is the statute waives the filing requirement. And so therefore, we didn't have to actually file a claim in the first place. We had an original opportunity to go to the court to say the IRS should have sent us the money. No, no, but you have to have an actual grant of jurisdiction, right? So we only have the jurisdiction that Congress gives us, right? And Congress gave us jurisdiction under 7422 to address these claims. And so no other statute, 6230 doesn't grant me any jurisdiction, right? I have to have a jurisdictional grant. You got to point to a statute that gives a federal court power. And the only statute that you pointed to to give a federal court power is 7422. And that requires a duly filed claim. Yes, Your Honor. And we did file a claim. And so what 6230 is... Duly filed. In fact, well, we would... And that's the debate. I get that's the debate. You think it's timely and it's not. But I think the point being is that if it's not a timely filed claim, we lack jurisdiction. And Your Honor, our position is twofold. Number one, the statute creates the claim by waiving the requirement of a filing. How does it create a claim by waiving a requirement? It says that to the extent practical, credit or refund shall be allowed or made without any requirement that a partner file a claim therefore. That means the IRS can do it as a matter of grace, right? They can choose to do it. That's great. So what it doesn't do is give me any jurisdiction. And so Your Honor, with respect to that one, we did file a claim. And the IRS was on notice of it by 6230. And so therefore it was timely. And so they don't get to rely on October 28, 2017 to say it was timely. It was timely when the IRS messed up under 6230. The filing of the piece of paper was just a procedural property that we had to... Procedural necessity for us to have jurisdiction. But it was timely. It was timely when made whether once it was whether it was received or not. I mean, there is absolutely, it's crystal clear in the record that the IRS has received a copy of the 2013 1040X. Totally with you. But the whole argument, you're not saying that 6230 means you don't have to file a claim to get into federal court. You're saying instead 6230 means that it's timely, even if it's after the time that would otherwise be provided. Otherwise, this statute means nothing. Yes, sir. I don't think it means that they're entitled to do it as a matter of grace. It still wouldn't mean that regardless. It wouldn't have to affect federal court in any way because it would grant the IRS the authority as a matter of grace to do it. But we have to then otherwise, your honor, there was no mechanism for our client to to receive the money that the IRS... No, no, it was. It was. All you had to do is send it by certified mail. If you send it by certified mail, you're all good, right? Because you fall under 7502C is timely. We're all good here. Well, you're right. And you agree that if you had filed it by certified mail, you would fit into 7502C and you would be timely and you would have your money. Yes, your honor. And I would point it would be nice if the IRS would tell people that because their own publication. This is what they send to the send to taxpayers says mail it. There's nothing in here that says you have to mail by certified mail. And in fact, 1993, judge raised like a due process argument on that ground. Well, you're right. So here's I get it right. I mean, listen, I'm well, understanding the IRS code is gibberish, right? But right. So they have buried it in the CFR. But what is what is published for the taxpayer says stick it in the mail. 1993, Judge Ross Anderson, District of South Carolina, looked at this provision, the same language and said, IRS, you can't rely on this nonsense when you're all when the statute just simply said, I mean, the publication simply says stick it in the mail. 1993, in 2011, they enacted this regulation. It says, oh, well, no, but it has to be certified mail. 2020, it's the same language from 22 years or from 27 years ago. When Judge Ross Anderson said, we're going to stop the government because it's not telling the public you've got to use certified mail. And your honor, their argument is not, as Mr. Willie said, that we didn't file the claim. Their argument is they didn't write it down when they got it. There's no evidence in this record. There's no allegation. His argument is that they never received it. Well, that might not be evidence of that. I get your point. That's not in the record. No, your honor. There, the only thing in the record is that they don't have any record of receiving it. There is, this document was not returned by the postal service. There was mailing the same day to a different IRS office that they got, Form 843. The only thing in the record is, the only date is July 17, 2017, that the envelope itself, and consider this, your honor, a lot of people sign their return and take it to the mailbox. And so it's, practically speaking, it's mailed the same day it's signed. That's the way I do it. Well, if the IRS takes the tax return, but they've thrown away the envelope, they could plausibly say, well, it was probably mailed the same day it was signed. 502A, the date of mailing is the date of filing. And so they say, okay, so it is plausible that what happened was just that. They opened the envelope. They looked at the date. They didn't look at the postmark. They looked at the date it was signed. They typed into the computer, July 17, 2017. Your point on that is, you ought to get to do discovery to find out if you can support that. In your world, that's a theory that you think you've plausibly alleged enough facts to put forward, but you got to do discovery to figure that out. And we don't have, all we need is some evidence of actual delivery. It doesn't have to be conclusive. This is just motion to dismiss. Get us over the hump. But your honor, I would submit that the IRS's position is, if the Postal Service messes up, it's the taxpayer's fault. If the IRS messes up when it's delivered, it's on the taxpayer. And as this court said in crime... Unless the taxpayer uses certified mail. And still has the receipt. Because if the taxpayer paid for certified mail, didn't think anything about it, and lost the receipt, and I don't recall which case it is where they couldn't find the receipt, even though they allege they had done, you got to have the receipt. You got to have proof in court. So still the IRS loses it. And this court said in 1978 in Curry, that the government cannot rely on its own negligence to the disadvantage of a taxpayer. Now that's a prisoner case, but it's the same point. So if the Postal Service and government employees mess up, then the taxpayer suffers. If the IRS employees mess up because they get it, but they don't log it right, or they throw it in the trash, or it gets lost between the mail doc and whoever they're supposed to process it, then the taxpayer suffers on that. And so yes, Your Honor, the only saving grace is that we don't follow what the IRS says in Publication 17. We follow what Congress says. We pick Congress instead of... I mean, listen, you got no problem with me there, right? Instead of following, you know, the executive branch's sort of description, we actually just follow what Congress says. If you conclude that Congress said in C, that there's no more mailbox rule, but the only way to prove it is to have certified mail, unless the IRS does its job, then yes, you're right. Your Honor, I say I'm way over my time. So... You're going to cite some case here, and you picked up these papers, and you all said something. Oh, Your Honor, that was a reference to the Curry case from 78, where this court said that the government cannot take advantage of its own negligence. Thank you very much. Thank you, Your Honor. Good to have both of you, or all of you here, and we appreciate your good work and your fine arguments. And if we could do so, we'd come down and shake hands with you and tell you that personally, which this court does normally, but we're suspended that practice because of the pandemic. With that said, Madam Clerk, we will adjourn court for the day.
judges: Robert B. King, Julius N. Richardson, Diana Gribbon Motz